### RAYMOND v. SPITZER.

SPECIFIC PERFORMANCE—FRAUD—REMEDIES—DEFENSES.

Defendant agreed in writing to convey to the vendee or his assigns certain premises, in consideration of the transfer to defendant of $1,000 in stock of a building and loan association. The vendee agreed to pay the installments required to mature the stock. The vendor claimed that the vendee

falsely represented that the stock would mature in eighty months upon the specified payments. In fact it took several years longer than that time to mature. Defendant took no sufficient steps to forfeit the contract, and attempted at the maturity of the stock to collect the principal from the building and loan association. The original vendee assigned his interest in the property to complainants who did not participate in the alleged fraudulent representations. In a suit for specific performance, *held*, that a decree enforcing the provisions of the contract should be affirmed, and that no equitable considerations require that complainants be remitted to their action at law.

Appeal from Ingham; Wiest, J. Submitted January 6, 1911. (Docket No. 36.) Decided February 1, 1911.

Bill by Rufus Raymond and Guy A. Raymond against Mary A. Spitzer and the Capitol Investment, Building & Loan Association for the specific performance of a land contract. From a decree for complainants, defendant Mary A. Spitzer appeals. Affirmed.

*Lawton T. Hemans* (*Louis B. McArthur*, of counsel), for complainants.

*Frank L. Dodge*, for defendant Spitzer.

OSTRANDER, C. J. Under date October 18, 1895, the defendant Mary A. Spitzer, owning some property in the city of Mason, Mich., agreed to sell the same to one Charles S. Clark, and the parties executed and acknowledged in writing an executory contract for the purchase and sale of said premises, dated on that day, to the terms of which, because of the peculiar nature of the controversy, particular attention must be given. The purchase price stated in the contract is $1,000, and this the second party agreed to pay as follows: He was to transfer and assign to the vendor 10 shares of Class B stock in the Capitol Investment, Building & Loan Association of Lansing, Mich., evidenced by a certain certificate dated October 1, 1894, issued to one Irish, and by him in July, 1895, as-

signed to Clark. During the life of the stock, and that means until it was fully paid up and matured according to the rules of the association, he was to pay the monthly installments. Besides this, the vendee agreed to pay all taxes and to keep the buildings erected and to be erected insured against loss and damage by fire and assign the policy to the vendor, the proceeds of any such policy in case of fire to be applied in satisfaction of the purchase money, and the surplus to be turned over to the vendee or his assignee. The vendor agreed that, upon the maturity of the stock or the prior payment of the sum of $1,000, she would deliver to the vendee or his assigns a good conveyance of the premises in fee. It was mutually agreed that the vendee should have possession of the premises upon the execution and delivery of the contract, he keeping the same in as good condition as they were at the date when he took them.

Clark, the vendee, went into possession of the premises. He sold and transferred his interest in the contract and in the premises to one Albert J. Hall, who also went into possession, and afterwards, and on the 12th of March, 1898, sold and assigned his interest in the contract and in the land to complainants, who claim in their bill to have made considerable improvements.

The bill in this cause is filed for specific performance of the contract by the vendor, and, until such performance, to restrain the Capitol Investment, Building & Loan Association from paying the defendant Spitzer the matured value of said certificate of stock, it being charged in the bill that the stock matured in September, 1907, and that the vendor, upon repeated applications made to her to execute a deed, refused to do so.

The defendant Spitzer answered, and in the answer claims certain affirmative relief. It is denied by her that complainants requested her to make, execute, and forward a deed of the premises in accordance with the terms of the contract, or that she ever received any communication, request, or demand from complainants to make, execute,

and forward a deed of the premises in accordance with the terms of the contract. She denies that she ever refused at any time to execute a deed as in the contract covenanted and agreed. She admits she made a draft upon the Capitol Investment, Building & Loan Association through one of the banks of the city of Lansing, but she denies that she was seeking to obtain possession of the money due on said stock without executing and delivering the deed of conveyance. She admits that she is without the jurisdiction of the court as the bill charges. She denies that complainants are entitled to the relief prayed for in the bill for the following reasons: That, when she entered into this contract with Clark, she did so upon the representation of Clark and others concerned with him that the stock mentioned in the contract would mature in 80 months from the date of its issue, being about 67 months from the time when she took an assignment of it, and except for these representations she says she would not have made the contract; that the stock did not mature until October 1, 1907. She further says that, notwithstanding the manner in which she was induced to sign the contract, she would have abided by it, for the reason that she was advised that she would be obliged to do so, if the assignee of the contract had complied with the terms thereof:

"That she stood ready to make said deed and offered to deliver the same when the assignment of said contract was known to her, so that she could know positively to whom the deed should be made and delivered. This they omitted, refused, neglected, and failed to advise this defendant of, and have not, up to the beginning of this suit, advised this defendant who said contract had been assigned to."

She further says she has been deprived of the avails of the property because of the contract, and of the rents which aggregate a large amount; that she became so involved that it was necessary for her to raise a sum of money and was compelled to and did mortgage the prem-

ises for $1,500 to another citizen of Ohio, who transferred his mortgage to a bank in Ohio. She says she should not be compelled to execute a deed because she was fraudulently induced to enter into the contract; that, although unknown to her, the property at the time she sold it was of much greater value than the stock at the time of entering into said contract, and that the vendee was aware that the stock would not mature within the time represented; that at the time of commencing this suit, complainants were not possessed of any right, title, and interest in and to said contract by virtue of the assignment of it, or of any right, title, and interest in the premises; that defendant had never been notified by said Clark, or any other person having authority to do so, of the assignment of the contract before this suit was commenced; that no tender of any sum of money or other valuable consideration has been made to defendant as payment; that she has never received any payment of any kind. She insists that an account of the rentals received by the complainants shall be taken, and a decree entered giving a lien upon whatever interest complainants may have in and to the said certificate of stock. Specifically affirmative relief is claimed as follows:

"(1) That the said complainants may be required to make, without oath, their full, direct answer to the affirmative portion of the answer of this defendant.

"(2) That there may be an accounting of the rentals received for said house and premises and expenditures for repairs and of taxes, and such other matters in that connection as may be deemed just and proper by this honorable court.

"(3) That this defendant may, by order of this court, be decreed to be entitled to such moneys as may be found in excess of the moneys used in the repairing of said premises, and such moneys as have been paid upon the taxes thereof, and a balance thereof certified in her favor.

"(4) And that she may have such other and further relief in the premises as may be warranted under the pleadings and proofs in said cause and as equity may require

and as to this honorable court shall seem meet and proper."

The cross-bill was answered, replications were filed, and the cause came on to be heard in open court. A decree was entered in accordance with the prayer of the bill of complaint, providing that upon the execution and delivery of a deed or the recording of a certified copy of the decree, the Capitol Investment, Building & Loan Association pay over to said Spitzer the matured value of the ten shares of stock.

O. M. Spitzer, the husband of defendant Spitzer, both of whom then lived and now live in Ohio, made the bargain for the sale of the premises, and his wife, acting upon his advice, executed the contract. He gave testimony to the effect that William Clark, Charles S. Clark, and A. J. Hall made representations to him that the stock would mature in 80 months from date of issue. The certificate was assigned to his wife and has been in her possession. The payments required to mature it were 50 cents a month a share, or $5 a month for 10 shares. It is incredible that one should have believed that with such payments the stock could be honestly matured in 80 months. It is perhaps equally incredible that the owner of property should sell it upon the terms stated in the contract and forego interest, rent, and all emolument for a period which should have been estimated at from 10 to 12 years. Payments were made to the local agent of the building and loan association at Mason, and the stock was matured in accordance with the rules and regulations of the company. The vendor, until after it had matured, never protested that the stock should have been earlier matured, never demanded why it was not matured. On the contrary, after the period of 80 months from October 1, 1894, had expired, and on February 8, 1902, Mrs. Spitzer wrote to one of the complainants stating she was informed that the insurance upon the property, the contract for the sale of which, she recites, had been assigned by

Clark to Hall and from Hall to Raymond, had not been assigned to her as agreed.   Her letter ends as follows:

"As this is not in conformity with the terms of our contract, I now declare the contract void.   However, if the balance due on it is paid me by March 1, 1902, I will give you a deed of the place upon receipt of same. Hoping that everything may still be fixed up satisfactory to yourself, as well as myself, I remain."

Explanations were made which appear to have been satisfactory.   It is not now claimed that the contract was forfeited.   The money to cancel and retire the stock was sent to the local agent at Mason.   Mrs. Spitzer on September 17, 1907, drew on the building and loan association for $1,000.   On September 30, 1907, she drew on the Mason agent for $1,003.40.   On October 10, 1907, she drew on the association for $1,003.40.   Apparently with her last draft, or at the time of making it, she wrote to the association the following letter:

" I drew a sight draft on you for my certificate of stock class B2285 on September 19, 1907, with certificate attached, that you turned down, and you refer it to Mr. Hall of Mason.   Then I drew on him, at your suggestion, and he also turned it down.   Now, I have drawn the second one, with certificate attached, upon you people, on which I demand payment when presented to you, with the legal rate of interest which the State of Michigan allowed from the 19th of September, 1907.   I shall not look to any one else for the payment of this stock, and if not paid, when presented, I shall expect damages.   I have been to a good deal of trouble already.   I have given you no authority to pay this money to any one.   I want spot cash for this certificate, and nothing else.   I drew threw the Elyria Savings Bank of Elyria the 10th of October, 1907."

She made a deed of the property, reciting that it was upon condition, and sent it to a bank in Mason with instruction that it be delivered upon payment of $1,100. It is not necessary to recite here the efforts by personal interviews with Mrs. Spitzer and by correspondence to

secure a proper deed from her and to pay over to her the value of the matured stock. It is sufficient to say that the contract was fully performed by the assignee of the vendee, who has not yet secured a conveyance, and that the money for the matured stock is awaiting, and has since September 17, 1908, awaited, the execution and delivery of the deed. Under the circumstances, which have, perhaps, been set out with unnecessary particularity, we find no reason for refusing to affirm the decree of the court below. It is not claimed that complainants were parties to any false representations concerning the stock. Defendant Spitzer is a nonresident of the State. Equitable considerations do not demand that the bill be dismissed and complainants be remitted to an action at law for their damages for breach of the contract. Indeed, we are not asked to grant such relief. We know of no reasonable theory which will support a decree which, while requiring that a deed shall be executed and delivered, imposes terms upon complainants.

We therefore affirm the decree, with costs to complainants.

BIRD, HOOKER, BLAIR, and STONE, JJ., concurred.